FILED'09 JUN 19 08:47 USDC-ORP

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN M. LaGRAND,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

Civil No. 08-363-HA
OPINION AND ORDER

HAGGERTY, District Judge:

    Plaintiff Brian M. LaGrand seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his application to renew his eligibility for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

## ADMINISTRATIVE BACKGROUND

    Plaintiff applied for benefits on April 1, 1995, alleging disability from physical and mental impairments including: severe depression, suicidal ideation, agoraphobia, anxiety disorder, panic disorder, bipolar disorder, multiple personality disorder, mood disorder, post-

1 - OPINION AND ORDER

traumatic stress disorder, dizziness, shoulder pain, memory loss, and headaches. He received a favorable decision finding disability on November 27, 1998. Plaintiff was found to have the following medically determinable impairments: depressive disorder, anxiety disorder, and personality disorder. Tr. 16.

Plaintiff received notice of cessation of benefits on April 30, 2003. After reconsideration, plaintiff again received notice of cessation of benefits on October 23, 2003.

Plaintiff sought administrative review of the cessation. The Administrative Law Judge (ALJ) conducted a hearing on May 4, 2006, at which she heard testimony from plaintiff, who was represented by counsel, plaintiff's sister, and a vocational expert (VE).

On December 20, 2006, the ALJ issued a decision finding that plaintiff's disability ended on April 1, 2003. The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Plaintiff subsequently initiated this action.

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his or her impairments are of such severity that the impairments preclude the claimant from undertaking previous work and the claimant is deemed unable to engage in any other SGA existing in the national economy after taking into account the claimant's age, education, and work

experience. 42 U.S.C. § 423(d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations omitted).

Once a claimant is found eligible, his or her DIB eligibility is periodically reviewed to determine if claimant continues to be disabled. *See* 20 C.F.R. § 404.1594(a).

The Commissioner has established an eight-step sequential evaluation process that constitutes a continuing disability review for purposes of determining whether a person continues to be eligible for previously awarded disability benefits.

First, the Commissioner determines whether the claimant is engaging in SGA. *See* 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. If not, the Commissioner proceeds to step two.

Under step two, the Commissioner determines whether the claimant's impairments meet or equal the requirements of a listed impairment in the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1594(f)(2). If any impairment meets or equals a listed impairment, the claimant remains disabled. If not, the Commissioner proceeds to step three.

Under step three, the Commissioner determines whether there has been medical improvement.[1] If no medical improvement is evident (and if no exceptions apply, addressed at step five), the claimant remains disabled. If there is medical improvement, the Commissioner proceeds to step four.

---

[1] Medical improvement is defined as any decrease in the severity of impairments that were present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). Such a determination must be supported by changes that demonstrate improvement in relation to symptoms, signs, or laboratory findings associated with the impairment. § 404.1594.

3  - OPINION AND ORDER

At step four the Commissioner determines whether the medical improvement is related to the claimant's ability to work. Medical improvement is "related to the ability to work" if there has been a decrease in the severity of the impairment present at the time of the most recent medical decision and an increase in the individual's functional capacity to perform basic work activities. 20 C.F.R.§ 404.1594(b)(1); 404.1594(f)(3) & (4). If the medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five. If the improvement is related, the Commissioner proceeds to step six.

Step five applies if no medical improvement is shown or the improvement is unrelated to work ability. Under these circumstances, the Commissioner must decide whether an exception to the medical improvement standard applies. If not, then a finding of continuing disability is warranted. *See* 20 C.F.R. § 404.1594(f)(5).

Alternatively, when evident medical improvement is found to be related to work ability or when an exception to the medical improvement standard applies, then the Commissioner turns to step six and considers whether the claimant's current impairments in combination are severe. If the claimant's impairments are not severe, then the claimant is no longer considered disabled. If the impairments are severe, then the commissioner proceeds to step seven. *See* 20 C.F.R. § 404.1594(f)(6).

At step seven, the Commissioner assesses the claimant's ability to engage in SGA in accordance with 20 C.F.R. § 404.1561. If the claimant is found capable of performing past relevant work, then the disability will be found to have ended. If not, the Commissioner proceeds to step eight. *See* 20 C.F.R. § 404.1594(f)(7).

At step eight, after the claimant has been determined to be unable to perform past relevant work, the Commissioner assesses the claimant's residual functional capacity (RFC) and determines whether the claimant can perform other work. If so, then the claimant is no longer entitled to DIB. Alternatively, if the claimant cannot perform other work, a finding of continuing disability is warranted. *See* 20 C.F.R. §§ 404.1594(f)(8), 404.1560(c). The burden rests with the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform given his or her RFC, age, education, and work experience.

The Commissioner's decisions must be affirmed if they are based on proper legal standards and the accompanying findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097-98 (citations omitted). Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).

This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, is responsible for resolving conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support

either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted).

## SUMMARY OF ALJ'S FINDING

At step one of the sequential analysis, the ALJ found that plaintiff had not engaged in SGA since April 1, 2003. Tr. 16, Finding 3. The ALJ noted that plaintiff was convicted of wire fraud and other felonies resulting in his incarceration from February 2004 through November 2005. *Id.*

At step two, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment in the Listing of Impairments. Tr. 16, Finding 5.

At step three, the ALJ found medical improvement as of April 1, 2003. Tr. 17, Finding 6.

At step four, the ALJ found plaintiff's medical improvement was related to his ability to work. Tr. 19, Finding 7.

Because the ALJ found medical improvement that is related to plaintiff's ability to work, the ALJ did not need to determine if any exceptions to medical improvement applied at step five. *See* 20 C.F.R. § 404.1594(f)(5).

At step six, the ALJ determined plaintiff's mental impairments were severe. Tr. 19, Finding 8. The ALJ determined that plaintiff's dizziness and bone pain were not severe medical impairments. Tr. 16, Finding 4.

At step seven, the ALJ determined that plaintiff could not perform past work, Tr. 21, Finding 10, but possessed the RFC for unlimited exertion with vocational non-exertional limitations. Tr. 20, Finding 9. The ALJ found that plaintiff was involved in a detailed criminal

6 - OPINION AND ORDER

fraud requiring complex mental activities, and demonstrated an ability to engage in focused activities and detailed tasks. *Id.* Plaintiff also acknowledged his ability to perform daily tasks such as driving and attending gamblers anonymous meetings. *Id.* Plaintiff cannot interact socially with the general public extensively, but has no disabling condition based on his global assessment of functioning (GAF) score of 60. Tr. 21, Finding 9.

At step eight, after considering the testimony of the VE, the ALJ concluded that plaintiff could perform other work that exists in significant numbers in the national economy, including work in sales and analyzing records. Tr. 20, Findings 13-14.

## DISCUSSION

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for further findings or for an award of benefits due to a number of alleged errors. The alleged errors on the part of the ALJ include: (1) improperly finding medical improvement, (2) improperly rejecting lay witness testimony, (3) improperly formulating plaintiff's RFC, and (4) improperly assessing plaintiff's credibility.

### 1.     Medical Improvement

Plaintiff contends that the ALJ's determination that medical improvement occurred is not supported by substantial evidence in the record. As noted above, medical improvement is defined as any decrease in the severity of impairments that were present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). "The key question is not whether the claimant still suffered from the same medical problem he had when benefits were awarded, but whether the severity of the problem had decreased sufficiently to enable him to engage in gainful activity." *Warre v. Commissioner of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

7 - OPINION AND ORDER


(9th Cir. 2006) (construing 20 C.F.R. § 416.994(a)(c), the companion statute reviewing continuing disability for children).

A review of plaintiff's medical records indicates that by July 2002, plaintiff reported he was not depressed, not experiencing panic attacks, attending gamblers anonymous meetings, spending time in his garden, and taking public transportation or walking often. Tr. 50, 325-27. Plaintiff's physician noted that from a mental health standpoint, plaintiff was doing much better. Tr. 328. Plaintiff's reports of no panic attacks or depression is a significant improvement compared to his prior reports of serious depression and suicidal thoughts from 2000 until May 2002. Tr. 330-38.

In January 2003, plaintiff underwent a psychodiagnostic evaluation that indicated plaintiff was able to complete simple calculations and a personality test suggested that plaintiff was malingering. Tr. 51, 282-86.

Plaintiff has many medical records from the Federal Bureau of Prisons that are inconsistent regarding plaintiff's reports of depression and anxiety. Tr. 340-478. However, these records show improvement in plaintiff's panic attacks and mood disorder. Tr. 340-44.

Plaintiff's records and testimony at the hearing indicate that he is able to perform household chores, go shopping, and take public transportation. Tr. 51, 991-95. Plaintiff's sister also testified that plaintiff is able to assist with laundry and vacuuming. Tr. 1022-23. These reports of plaintiff's daily activities support the ALJ's finding of medical improvement.

The ALJ correctly concluded that plaintiff's relevant medical record establishes that plaintiff's impairments have decreased in severity since 2003, and that this decrease was significant when compared to his initial disability determination in 1995. This improvement,

8 - OPINION AND ORDER

when considered with plaintiff's enhanced RFC and ability to perform other work, constitutes substantial evidence in the record as a whole that supports the Commissioner's decision that plaintiff was no longer disabled under the Act as of April 2003.

## 2. Lay Witness Testimony

Plaintiff argues that the ALJ improperly refused to admit testimony from plaintiff's wife and rejected testimony provided by plaintiff's sister addressing plaintiff's health.

In determining a claimant's possible disability, an ALJ must consider lay witness testimony when it is presented. 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); *see also Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay testimony as to a claimant's symptoms or how an impairment affects a person is considered competent evidence and cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted).

To discount the testimony of lay witnesses, an ALJ must give reasons that are germane to each witness. *Stout*, 454 F.3d at 1053; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless [the ALJ] expressly determines to disregard such testimony and gives reasons germane to each witness for doing so") (citations omitted). When an ALJ fails to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053.

However, if lay testimony is controverted by the medical evidence presented, the ALJ does not err by ignoring the lay testimony. *Timmons v. Commissioner of Soc. Sec.*, 546 F. Supp. 2d 778, 795-96 (E. D. Cal. 2008) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). If the lay testimony is consistent with the medical evidence, then the ALJ must consider it and comment upon it. *Id.* (citing *Stout*, 454 F.3d at 1053).

Plaintiff's assertion that the ALJ improperly refused to hear testimony from plaintiff's wife is construed as referring to the ALJ's decision to only admit one of plaintiff's witnesses due to time constraints.[2] Tr. 1017. Plaintiff failed to support the assertion of this alleged error with any analysis or legal authority, and failed to establish that the omission of testimony from plaintiff's wife caused significant prejudice.

An error is harmless if it is not prejudicial to the claimant or irrelevant to the ALJ's ultimate disability determination. *See Stout*, 454 F.3d at 1055. Because both plaintiff's wife and plaintiff's sister live with plaintiff, testimony from plaintiff's sister likely encompassed most or all of the evidence that plaintiff's spouse would have offered. Moreover, failure to provide authorities for a claimant's argument in his or her briefings constitutes a waiver of that argument. *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citations omitted). Plaintiff failed to present authority to support his argument that the ALJ's decision to only hear testimony from plaintiff's sister unfairly prejudiced plaintiff. The ALJ's decision regarding plaintiff's wife's testimony was, at most, harmless error.

---

[2] Plaintiff's attorney chose plaintiff's sister to testify in lieu of plaintiff's wife. Tr. 1017.

10 - OPINION AND ORDER

Plaintiff's claim that the ALJ rejected his sister's testimony is not supported by the record. The ALJ commented upon this lay testimony and plainly considered it in the evaluation of plaintiff's eligibility for benefits. Tr. 20. Ms. LaGrand explained that since 2003, plaintiff is able to get dressed by himself and assists in household chores, including washing dishes, vacuuming, and mowing the lawn. Tr. 1020-23, 1026. The ALJ relied on Ms. LaGrand's testimony when addressing activities that plaintiff undertakes in determining plaintiff's RFC. Tr. 20, Finding 9. The ALJ considered this lay testimony and concluded that her testimony was generally more credible than plaintiff's testimony. Tr. 20.

Plaintiff refers to Ms. LaGrand's testimony regarding plaintiff's continued mental problems and deterioration in health, deeming it of "particular value" to the ALJ's determination of benefits, and argues that it "<u>must</u> be credited as true." Reply at 5. However, the ALJ recognized that many of plaintiff's alleged physical and mental limitations were not supported by medical evidence. Tr. 1040. To the extent that lay testimony regarding plaintiff's health was controverted by medical evidence, the ALJ was free to disregard such testimony.

3.  **RFC Calculation**

Plaintiff argues that the hypothetical question posited to the VE did not encompass all of plaintiff's limitations established by the record and that the ALJ improperly concluded that plaintiff could perform semi-skilled work. Plaintiff argues that the ALJ failed to perform a functional analysis of plaintiff's past jobs and failed to compare that analysis to his existing capabilities.

Plaintiff misconstrues Social Security Ruling (SSR) 96-8p as requiring the ALJ to perform a functional analysis of plaintiff's past jobs. Ruling 96-8p requires the ALJ to describe how the evidence supports each RFC conclusion, and to cite to specific medical facts and non-medical evidence for each conclusion. SSR 96-8p, *available at* 1996 WL 374184, at *7. Here, the ALJ supported findings of plaintiff's RFC based on objective medical evidence and plaintiff's daily activities as acknowledged by both plaintiff and his sister. Tr. 20, Finding 9. The ALJ's analysis of the relevant medical facts and non-medical evidence is supported by substantial evidence.

After determining that plaintiff could not perform his past relevant work, the ALJ properly addressed whether other work existed in significant numbers in the national economy that plaintiff could perform. The ALJ properly took testimony from a VE for this purpose. *See Tackett*, 180 F.3d at 1099. The RFC finding and the hypothetical questioning posed to the VE appropriately included limitations "based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citation omitted). In this case, the hypothetical question contained the following limitations: can complete simple, detailed, and complex tasks, no exertional limitations, can maintain attention and concentration, and can socially interact, but not extensively, with the public. Tr. 1037. The ALJ based those limitations on plaintiff's involvement in a detailed and complex fraud scheme, plaintiff's testimony showing independent activities of daily living, and a GAF score of 70 in July 2005, indicating no disabling conditions. Tr. 20-21, 382, 991-95.

The VE provided a list of jobs that someone with these limitations could perform. Tr. 1037-39. In so doing, she relied upon the Dictionary of Occupational Titles (DOT), which is a publication of the United States Department of Labor containing descriptions of the requirements for thousands of jobs that exist in the national economy. Definitions provided by the DOT are generic and offer "the approximate maximum requirements for each position, rather than their range." *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995).

The VE testified that a person with plaintiff's limitations could perform supervisory functions in the fabrication industry, including the jobs of an inspector (DOT 619.364-010), and a template maker (DOT 809.484-014). Tr. 1037-38.

Plaintiff contends that the VE's testimony that someone with plaintiff's limitations could perform the jobs of inspector and template maker should be rejected because the evidence does not support plaintiff's ability to perform semi-skilled work. However, the ALJ based the hypothetical question on objective medical evidence and rejected plaintiff's subjective complaints that were unsupported by medical evidence. Tr. 1040. The ALJ's hypothetical questioning was based upon substantial evidence in the record. Accordingly, this court concludes that the ALJ's reliance upon the VE's testimony in finding that plaintiff could perform other work was proper. *See Osenbrock*, 240 F.3d at 1164-65 (citations omitted).

4.     **Plaintiff's Credibility**

Finally, plaintiff argues that the ALJ erred in evaluating plaintiff's credibility. An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In determining a plaintiff's

13 - OPINION AND ORDER

credibility, an ALJ should consider "ordinary techniques of credibility evaluation," including plaintiff's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ also may consider a claimant's work record and the observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Under *Smolen* and its progeny, a two-step analysis applies at the administrative level when considering a claimant's subjective credibility. *Smolen*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. *Id.* at 1281-82. Even partial support from the medical evidence is sufficient. In the absence of evidence of malingering, an ALJ can reject the claimant's testimony about the severity of symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *see also* SSR 96-7p (stating that the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

Moreover, a claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F.R.§§ 404.1529(c)(2); 416. 929(c)(2).

In evaluating plaintiff's credibility, the ALJ concluded that "given [plaintiff's] long failure to seek care or medications, [his] alleged anxiety and depression are not fully credible."

Tr. 17. The ALJ also found that a review of the record demonstrates plaintiff's impairments cannot reasonably "produce the alleged symptoms he claims." Tr. 20.

An ALJ may properly rely on inconsistencies between a claimant's testimony and the claimant's conduct and daily activities. *See, e.g., Thomas*, 278 F.3d at 958-59 (citation omitted). An ALJ also may consider "[t]reatment, other than medication;" "[f]unctional restrictions;" "[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation" in assessing the credibility of the allegedly disabling subjective symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *see also* SSR 96-7p; 20 C.F.R. 404.1529 (2005); *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (holding it is proper to rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (holding it is proper to rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding it is proper to rely on the fact that only conservative treatment had been prescribed or followed); *Orteza*, 50 F.3d at 750 (holding it is proper to rely in part upon claimant's daily activities).

Plaintiff challenges the ALJ's finding that his impairments could not have "reasonably been expected" to produce his alleged symptoms based on the plaintiff's magnetic resonance imaging (MRI), electroencephalography (EEG) and "neurologic consult." Reply at 6. However, this medical report diagnosed plaintiff with a mild cognitive disorder, and stated that he "showed no problems with independent activities of daily living," "worked appropriately at his

15 - OPINION AND ORDER

job assignment," and "attended various activities." Tr. 380-81. Plaintiff's neurologic consult also suggested that his mild non-specific slowing on the EEG may be related to his medication because no other explanation exists. Tr. 416.

Plaintiff also argues that his alleged failure to seek care and medication is contradicted by plaintiff's testimony and "substantial medical evidence." Reply at 7. Notwithstanding plaintiff's interpretation of the evidence, this court concludes that the ALJ's findings regarding plaintiff's testimony of subjective complaints and the conflicts arising between those complaints and objective medical reports were properly supported by substantial evidence in the record. The ALJ referred to a January 2003 psychological examination in which plaintiff's symptoms were indicative of exaggeration and malingering. Tr. 18, 284. Similarly, the ALJ found that plaintiff had the ability to "over-endorse symptoms" and scored a "faked bad" on his personality test. *Id.* A progress note in 2005 also indicated that plaintiff intentionally performs poorly on cognitive testing. Tr. 436.

The ALJ also referred to a medical evaluation plaintiff received in May 2003, which indicated that plaintiff's conditions could improve but that plaintiff failed to seek treatment. Tr. 21. The ALJ noted that plaintiff failed to seek mental health treatment from his disability onset date until February 2000, and that plaintiff failed to respond to appointment requests. Tr. 17, 867-69. The ALJ additionally referred to plaintiff's medical records indicating that he was not experiencing panic attacks and had improved mental health, despite the increased stress from plaintiff's felony charges, his reluctance to keep appointments, and his failure to take medication. Tr. 17-18, 326-28, 853-56.

The ALJ also found plaintiff's credibility was decreased because of his convicted felonies for wire fraud and conspiracy that affect his honesty. Tr. 21.

These recorded reasons for viewing plaintiff's credibility as diminished, and the careful analysis provided by the ALJ regarding the evidence of plaintiff's capacities to engage in activities, were supported by substantial evidence in the record and were of clear and convincing force. Accordingly, despite plaintiff's differing view of the evidence, plaintiff's assignment of error regarding the ALJ's credibility determination is rejected.

## CONCLUSION

Based on the foregoing, this court concludes that the findings of the Commissioner are based upon correct legal standards and are supported by substantial evidence existing in the record. The Commissioner's decision denying Brian M. LaGrand benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this 19 day of June, 2009.

ANCER L. HAGGERTY
United States District Judge